**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

The Medical Protective Company,

Plaintiff,

vs.

Herman Pang, M..D., and Does I-X,

Defendants.

No. CV 05-2924-PHX-SMM

**ORDER**

On September 21, 2005, The Medical Protective Company ("Medical Protective") filed this lawsuit for rescission and declaratory relief against Herman Pang, M.D. ("Dr. Pang"), a physician to whom Medical Protective has issued a policy of professional liability insurance. (Dkt. 1.) Kymberli K. Williamson ("Williamson") is a former patient of Dr. Pang who has filed a medical malpractice lawsuit against him in Maricopa County Superior Court. Williamson's malpractice action has not yet been litigated to judgment. After Medical Protective filed this lawsuit against Dr. Pang, he filed a Rule 12(b)(7) Motion for Failure to join Williamson under Rule 19 (Dkt. 9). Shortly thereafter, Williamson filed a Motion to Intervene. (Dkt.14.) After considering the arguments raised by both parties and Williamson, the Court now issues the following ruling.

**BACKGROUND**

On December 3, 2001, Dr. Pang performed an aortic valve replacement procedure on Williamson at John C. Lincoln Hospital in Phoenix ("Lincoln Hospital"). (Dkt. 1, ¶8.) The

next day, Williamson suffered complications that resulted in a different physician replacing the valve Dr. Pang had inserted with a smaller valve. (Id.). Williamson was subsequently diagnosed with multiple septic emboli in her digits, and is alleged to have suffered multiple strokes and complications, including the loss of several fingers and toes, peripheral vision, and her short-term memory. (Id.)

When Dr. Pang performed the valve replacement on Williamson, he was operating under a medical malpractice policy issued by Medical Protective. (Id., ¶7.) The policy provided malpractice coverage with liability limits of $1 million per claim and $3 million in the aggregate for the term July 17, 2001 through July 17, 2002 (the "First Policy"). (Id.)

On March 18, 2002 and May 22, 2002, Lincoln Hospital allegedly received records requests from counsel representing Williamson. (Id., ¶9.)

Medical Protective alleges that on June 10, 2002, Dr. Pang applied for an increase in his liability coverage limits retroactive to March 14, 2002. (Id., ¶10.)[1] In response to the question whether Dr. Pang had knowledge of any claims, potential claims, or suits in which he may become involved but had not yet reported to Medical Protective, Dr. Pang replied, "No." (Id.) Medical Protective alleges that, in reliance on Dr. Pang's representation, it accepted his request and increased coverage limits to $5 million per claim and $5 million in the aggregate retroactive to March 14, 2002 (the "Second Policy"). (Id.)

On July 25, 2002, Williamson filed a medical malpractice suit against Dr. Pang, Lincoln Hospital, and the manufacturer of the original valve (Medtronic) in Maricopa County Superior Court. (Id., ¶11.)[2]

On August 29, 2002, Dr. Pang reported service of Williamson's lawsuit to Medical Protective. (Id., ¶12.)

---

[1] Dr. Pang contends he requested increased coverage limits on March 14, 2002. (Dkt. 13 at 2.) This factual difference is immaterial to the instant motions.

[2] Trial is currently scheduled to begin on August 1, 2006. See CV-2002-014646, Minute Entry of 2/13/06.

On June 12, 2003, Dr. Pang requested Medical Protective to decrease his liability coverage limits to $1 million per claim and $3 million in the aggregate, effective July 17, 2003, the renewal date of the policy. (Id., ¶13.)

Medical Protective seeks a declaration of the invalidity of the increased limits of the Second Policy issued to Dr. Pang. (Id., ¶¶28-34.) Medical Protective alleges that the coverage limits set forth in the Second Policy are void because Dr. Pang's representations in the application for increased coverage were false and failed to accurately disclose his knowledge of Williamson's claim. (Id., ¶¶18-27.) Medical Protective's rescission claim does not seek to void the Second Policy in its entirety; it seeks to restore coverage limits to the amounts contained in the First Policy.

**DISCUSSION**

Williamson seeks to intervene as of right in this action on the grounds that Medical Protective's obligations under the current Second Policy ($5 million per claim) and her right to recover for Dr. Pang's malpractice could be eliminated in this action by the claims alleged against Dr. Pang. (Dkts. 14-15.)[3] Dr. Pang's Rule 19 Motion contends Williamson must be added to this action as a defendant because she is a necessary party and can feasibly be joined under Rule 19(a)(2)(i). (Dkt. 9 at 2-4.)

**A. Motion to Intervene as of Right**

Federal Rule of Civil Procedure 24(a)(2) provides for intervention of right, and states:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

In the absence of a statute conferring an unconditional right to intervene, the applicant must demonstrate that: (1) the application is timely; (2) the applicant has a "significantly

---

[3] Pursuant to Fed.R.Civ.P. 24(c), Williamson has filed both an Answer and a Counterclaim in this action. See Dkt. 15.

protectable" interest relating to the transaction or property that is the subject of the litigation; (3) the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interests are inadequately represented by the existing parties. League of United Latin Am. Citizens v. Wilson, 131 F.3d 1297, 1302 (9th Cir. 1997) (Wilson). Although the party seeking to intervene bears the burden of establishing all four elements, the Ninth Circuit construes these factors liberally in favor of the applicant, and review is guided by practical and equitable considerations, rather than technical distinctions. See United States v. Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004); Southwest Center for Biological Diversity v. Berg, 268 F.3d 810, 818 (9th Cir. 2001) (Biological Diversity); Donnelly v. Glickman, 159 F.3d 405, 409 (9th Cir. 1998).

**Williamson Lacks a Significant Protectable Interest**

Medical Protective argues that Williamson may not intervene as of right in this action because she has only a contingent economic interest in the coverage limitation issue, and thus lacks a significant protectable interest in the subject of this action. See Dkt. 18 at 4-10. For several reasons, the Court agrees.

Under Rule 24(a)(2), an applicant for intervention must claim an interest related to the property or transaction that is the subject of the action. The United States Supreme Court has interpreted this requirement to mean that the applicant must have a "significantly protectable interest." Donaldson v. United States, 400 U.S. 517, 531 (1971), superceded by statute on other grounds as stated in United States v. New York Tel. Co., 644 F.2d 953, 956 (2d Cir. 1981). Circuit courts have applied different standards in determining whether a "significantly protectable interest" exists.

In the Ninth Circuit, "[t]he requirement of a significantly protectable interest is generally satisfied when 'the interest is protectable under some law, and . . . there is a relationship between the legally protected interest and the claims at issue.'" Arakaki v. Cayetano, 324 F.3d 1078, 1084 (9th Cir. 2003) (quoting Sierra Club v. EPA, 995 F.2d 1478,

1484 (9th Cir. 1993)). In accordance with this standard, the Ninth Circuit has allowed intervention based upon such "legally protected interests" as contractual rights and federal pollution permits. See, e.g., Biological Diversity, 268 F.3d at 820 (a bare expectation is not a strong enough economic interest to justify intervention as of right but "[c]ontract rights are traditionally protectable interests"); Sierra Club, 995 F.2d at 1482-83 (finding Clean Water Act pollution permits to be significant protectable interests); Forest Conservation Council v. United States Forest Serv., 66 F.3d 1489, 1497 (9th Cir. 1995) (finding legal duty to maintain state lands adjacent to national forests sufficient protectable interests).

The Ninth Circuit has made clear, however, that pure economic expectancy is not a legally protected interest for purposes of intervention. See, e.g., Alisal Water, 370 F.3d at 920 (prospective collectability of debt insufficient interest that does not give rise to a right of intervention); So. Cal. Edison Co. v. Lynch, 307 F.3d 794, 803 (9th Cir. 2002) (applicants' "contingent, unsecured claim against a third-party debtor" fell "far short of the 'direct, non-contingent, substantial and legally protectable' interest required for intervention as a matter of right.") (citations omitted); Greene v. United States, 996 F.2d 973, 976 (9th Cir. 1993) ("movant must demonstrate a 'significantly protectable interest.' An economic stake in the outcome of the litigation, even if significant, is not enough.") (citations omitted).

Here, Williamson alleges that she "has an interest in the amount of coverage available to settle her claim against Dr. Pang and for indemnification of any judgment in the underlying lawsuit." (Dkt. 14 at 3.) Unfortunately for Williamson, she has failed to allege any interest at stake in the coverage limitation dispute between Medical Protective and Dr. Pang other than a pure economic expectancy. Moreover, Williamson's economic interest in the present case is speculative, because it hinges upon the opinions of the jury she will face in state court, who will decide whether Dr. Pang committed medical malpractice and, if so, how much money Williamson is entitled to recover. See Alisal Water Corp.,370 F.3d at 919-20 (a "non-speculative, economic interest may be sufficient to support a right of intervention" but economic interest must be "concrete and related to the underlying subject

matter of the action") (citing Arakaki, 324 F.3d at 1088). In addition, Williamson has failed to describe how her interest in the policy limits is legally protected, and has not cited any precedents that treat the kind of economic expectancy at issue here as a property right.

In a similar case, Hawaii-Pacific Venture Capital Corp. v. H.B. Rothbard, 564 F.2d 1343, 1346 (9th Cir. 1977), the Ninth Circuit held that the impaired ability to collect judgments that may arise from future claims does not give rise to a right of intervention. Indeed, "[t]o hold otherwise would create an open invitation for virtually any creditor of a defendant to intervene in a lawsuit where damages might be awarded." Alisal Water Corp., 370 F.3d at 919. The underlying reasoning of Hawaii-Pacific is directly applicable here because Williamson's sole interest in the present case is in the prospective collectability of a judgment that she has not yet been awarded. See Glyn v. Roy Al Boat Mgmt. Corp., 897 F.Supp. 451, 453 (D.Haw. 1995) ("Were this court to agree that [a lienholder] could intervene . . . it would transform every civil suit before this court into a kind of exaggerated interpleader action where all potential creditors of all parties could assert their rights.").

Similarly, in Portland Audubon Soc'y v. Hodel, 866 F.2d 302 (9th Cir. 1989), the Ninth Circuit held that timber industry representatives did not have a significant protectable interest to warrant intervention in the Audubon Society's action that sought to enjoin all timber sales pending preparation of an environmental impact report. Id. at 304, 309. The loggers in Portland Audubon lacked a legally protectable interest because they did not have any existing legal right, contract, or permits relating to the future timber sales that the Audubon Society sought to enjoin. See Sierra Club, 995 F.2d at 1482 (because the loggers in Portland Audubon did not have existing contracts for timber sales that were subject to injunction they had asserted "an economic interest based upon a bare expectation, not anything in the nature of real or personal property, contracts, or permits"). The potential financial loss therefore was purely speculative. Cf. Sierra Club, 995 F.2d at 1482 (existence of vested interest in pollution-discharge permits that had already issued distinguishes case from Portland Audubon Society and merits intervention).

Williamson's interest in the outcome of the instant case is similar to the timber industry representatives' interest in Portland Audobon. Her economic interest is based upon an uncertain expectation that she will acquire a judgment against Dr. Pang in excess of $1 million in her medical malpractice lawsuit. Because Williamson does not currently hold a judgment against Dr. Pang, her interest in securing $5 million insurance money to draw upon is not only purely economic, but also theoretical. An interest of this nature is "based upon a bare expectation," and therefore fails to satisfy the Ninth Circuit's mandate regarding Rule 24(a) intervention. Portland Audobon, 866 F.2d at 309.

Unfortunately, neither the parties nor Williamson have pointed to any Ninth Circuit decisions involving a motion to intervene by a prospective judgment holder in a lawsuit seeking to determine coverage limits. Nor has the Court found any Ninth Circuit authority directly on point. Other circuits have, however, spoken to the issue. In Liberty Mutual Ins. Co. v. Treesdale, Inc., 419 F.3d 216 (3d Cir. 2005), persons who were allegedly injured from exposure to the insured's asbestos-containing products sought to intervene in an insurance coverage declaratory judgment action between the insured and its insurer on the grounds that their right to recovery for the asbestos-related injuries could be eliminated in that action. Id. at 219. The district court denied the applicants' motion to intervene based on its conclusion that they did not have a sufficient interest in the litigation. Id. at 220. Relying on Third Circuit jurisprudence that a lawsuit's potential to "impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene," the Court of Appeals affirmed. Id. at 223. The Court ruled that "a mere economic interest in the outcome of litigation is insufficient to support a motion to intervene." Id. at 224. The Court determined that the applicants were attempting to put "the proverbial cart before the proverbial horse" because they had "neither settled their claims against [the insured] nor obtained a judgment," and thus were still required to prove the merits of their underlying personal injury case. Id. Because the declaratory judgment action may have – at most – impacted the applicants' ability to collect any judgment obtained in their personal injury

action, the applicants failed to establish a sufficient interest to intervene as of right. Id. at 227. The Third Circuit's decision in Liberty Mutual Ins. is persuasive, and therefore requires denial of Williamson's motion to intervene.

Williamson relies principally on TIG Specialty Ins. Co. v. Fin. Web.com, Inc., 208 F.R.D. 336 (M.D.Fla. 2002), to show that her interest in the instant case is sufficient to justify intervention. See Dkts. 14 at 5; 19 at 4 n.1. While TIG initially appears to address whether an intervenor's interest in a defendant's insurance policy proceeds qualifies as a "legally protectable" interest under Rule 24(a), it was decided against the weight of Ninth Circuit precedent. Specifically, although the TIG court cited the principles of intervention stated above, it failed to recognize the additional tenet that a mere economic interest in the proceedings is insufficient to support intervention. See TIG Specialty Ins. Co., 208 F.R.D. at 338 (relying on Mountain Top Condominium Association v. Dave Stabbert Master Builder, Incorporated, 72 F.3d 361 (3d Cir. 1995), to hold that economic interest in specific monetary fund sufficient to support a motion to intervene). Moreover, TIG is distinguishable because it involved a specific monetary fund. Id. Here, by contrast, Williamson has no property interest in Medical Protective's policy, nor does she have any other legally protectable interest in the policies. Rather, she has the kind of economic interest in the insurance proceeds that the Ninth Circuit has held does not support intervention of right.

The Court also rejects Williamson's argument that her interest in the present case is exactly the same as the economic interest of Medical Protective: "to determine whether $1 million or $5 million is available to settle her claim against Dr. Pang and, if the claim is not settled, to indemnify for any judgment in the malpractice action." (Dkt. 19 at 1.) The key distinction between Medical Protective and Williamson is that the former has a contract with Dr. Pang and, as a result, a contractual right to determine the extent of its obligation under the Second Policy. Williamson has no contractual relationship with Dr. Pang or Medical Protective, and she lacks any legally protectable interest that would be directly altered by the instant case. Rather, any impact on Williamson will be collateral. Therefore, the Court

rejects Williamson's argument that her answer and counterclaim present "a justiciable controversy over which this Court can and should take jurisdiction" (dkt. 19 at 2-4).

Williamson does not have a significantly protectable interest in the subject matter of this case. She has therefore failed to satisfy a prerequisite to intervention as of right. [4]

**B. Permissive Intervention**

In the alternative, Williamson seeks permissive intervention under Fed.R.Civ.P. 24(b)(2). Permissive intervention may be granted where the applicant demonstrates (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) a common question of law or fact exists between the applicant's claim or defense and the main action. Wilson, 131 F.3d at 1308. To intervene under Rule 24(b)(2), the applicant need not have any direct personal or pecuniary interest in the subject of the litigation. Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094, 1108 (9th Cir. 2002). However, even if the 24(b)(2) requirements are satisfied, the court has discretion to deny intervention, considering such factors as whether the intervention would unduly delay the action or unfairly prejudice existing parties. Donnelly, 159 F.3d at 412. In addition, the court should consider whether the applicant's interest is adequately represented by the existing parties. State of California v. Tahoe Regional Planning Agency, 792 F.2d 775, 779 (9th Cir. 1986).

No common questions of law or fact exist between Williamson's personal injury action against Dr. Pang and the declaratory judgment/rescission action between Medical Protective and Dr. Pang. The facts and law at issue in the present action involve whether Medical Protective is responsible to cover Dr. Pang under the limits stated in the Second Policy. While this claim obviously takes root in Dr. Pang's surgery on Williamson, the declaratory judgment/rescission action depends on the validity of the coverage limitations contained in the Second Policy; the instant case has nothing to do with whether Dr. Pang committed malpractice against Williamson. Similarly, Williamson's medical malpractice

---

[4] Because Williamson has not established a sufficient interest to intervene as of right, the Court need not proceed to the timing, impairment, or adequate representation prongs of the analysis.

action has nothing to do with determining whether the $5 million coverage limits in the Second Policy are void. Thus, Williamson's participation in the instant case would not add any further clarity or insight into the declaratory judgment/rescission claim at issue here.

Moreover, Williamson's participation in this litigation is not necessary because Dr. Pang is capable of adequately representing her interests. Like Williamson, Dr. Pang seeks to demonstrate that the Second Policy's $5 million coverage limits are valid. Therefore, intervention would be redundant and would impair the efficiency of the litigation. See California, (denying permissive intervention because applicant's interests adequately represented by existing parties so permitting applicant to intervene would be redundant and impair efficiency of litigation). Williamson contends Dr. Pang will not adequately represent her interests because she "has agreed to settle for the policy limit, [so] he has little reason to invest his own time and money in this action." (Dkt. 14 at 6.) The Court disagrees.

Williamson's medical malpractice allegations are asserted against Dr. Pang. If Williamson's damages exceed $1 million, as she claims, and the Court finds the Second Policy provides coverage of $1 million, Dr. Pang will be personally liable to Williamson for the excess amount. Thus, regardless of Williamson's contention that she will settle for policy limits, Dr. Pang will adequately represent her belief that the Second Policy provides coverage of $5 million in order to avoid personal exposure. See In re Healthsouth Corp. Ins. Lit., 219 F.R.D. 688, 693 (N.D. Ala. 2004) (in rescission action, injured tort plaintiff and insureds have "identical interests"– "to ensure that the coverages are not rescinded and that the policies provide coverage for any losses" plaintiff and insureds claim may be covered). Therefore, Williamson's motion for permissive intervention will be denied.

**C. Dr. Pang's Rule 19 Motion**

Dr. Pang has filed a motion under Fed.R.Civ.P. 19(a)(2)(i) to join Williamson as a party defendant on the grounds that she "is a person needed for just adjudication of Medical Protective's action in this Court." (Dkt. 9 at 2.)

Rule 19 provides for the mandatory joinder of parties "needed for a just adjudication," commonly referred to as "necessary" parties. Fed.R.Civ.P. 19. In the Ninth Circuit, a two-pronged analysis is used to determine whether a non-party is necessary under Rule 19(a). Yellowstone County v. Pease, 96 F.3d 1169, 1172 (9th Cir. 1996). If a non-party satisfies either of the two prongs, the non-party is necessary. Id. First, the Court determines whether "complete relief" is possible among those already parties to the suit. Makah Indian Tribe v. Verity, 910 F.2d 555, 558 (9th Cir. 1990). Second, the Court decides whether the non-party has a "legally protected interest in the suit." Id. The inquiry under Rule 19 is "a practical one and fact specific." Washington v. Daley, 173 F.3d 1158, 1165 (9th Cir. 1999). Thus, the question of whether to require the joinder of additional parties under Rule 19 must be made in light of the particular circumstances of each case. Northern Alaska Environmental Ctr. v. Hodel, 803 F.2d 466, 468 (9th Cir. 1986).

Dr. Pang does not argue that complete relief cannot be afforded without joining Williamson. Instead, he contends, "[a]s a personal injury/medical claim plaintiff against [him], Kymberli Williamson is a person who has an interest relating to the limits of [his] professional liability insurance policy such that her absence from this action may as a practical matter impair or impede her own ability to protect her interest." (Dkt. 9 at 3.) Thus, the relevant inquiry here is whether Williamson has a legally protected interest in the subject of the action. See Fed.R.Civ.P. 19(a)(2); Makah Indian Tribe, 910 F.2d at 558 (citation omitted). If a legally protected interest exists, the Court must then determine whether that interest will be impaired by the suit. To support joinder as a necessary party, the absent party's interest in the subject of the action must be more than a financial stake, and more than speculation about a future event. Makah Indian Tribe, 910 F.2d at 558.

Williamson's interest in the subject of this action is purely financial in nature – whether she will be able to recover in excess of $1 million from Dr. Pang if she is able to recover a judgment against him – and revolves around future speculation. Therefore, as previously discussed, supra at 4-9, Williamson does not have a legally protected interest in

the instant case. See Disabled Rights Action Committee v. Las Vegas Events, Inc., 375 F.3d 861, 883 (9th Cir. 2004) (a financial stake in the outcome of litigation is not a legally protected interest giving rise to necessity warranting joinder); McLaughlin v. International Ass'n of Machinists, 847 F.2d 620, 621 (9th Cir. 1988) ( "Speculation about the occurrence of a future event ordinarily does not render all parties potentially affected by that future event necessary or indispensable parties under Rule 19."); Northern Alaska Envtl. Center, 803 F.2d at 468; Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030, 1046 (9th Cir. 1983) (holding that speculation about occurrence of future event does not render all parties potentially affected by that future event necessary or indispensable parties).

Dr. Pang argues that Williamson has a legally protected interest in the present case because both Arizona law and the Medical Protective policy provide her the right "to sue Medical Protective after securing a judgment 'to recover under the terms of this policy in the same manner and to the same extent as the insured.'" (Dkt. 13 at 5.) The Court rejects Dr. Pang's argument because, as he concedes, neither of these rights is triggered unless Williamson first obtains a judgment against Dr. Pang and that bridge has not yet been crossed. See Sandoval v. Chenowith, 102 Ariz. 241, 245 (1967) ("after recovering a judgment against an insured under a liability policy, the injured third person may collect such judgment by instituting garnishment proceedings against the liability insurer"); Dkt. 13, Ex. F at ¶5 ("No action shall be maintained against the Company to recover a loss covered by this policy unless brought after the amount of such loss shall have been fixed . . . by a final judgment against the Insured."). Because Williamson has not yet obtained a judgment against Dr. Pang, and, indeed, at this point it is uncertain whether she will be able to do so, she has no legally protected interest in the present action.

**D. No Attorneys' Fees are Warranted**

In one sentence of its opposition, Medical Protective requests an award of attorney's fees it incurred in responding to Williamson's motion to intervene. (Dkt. 18 at 15.) This request is rejected for two reasons.

First, Medical Protective has not filed a separate motion for sanctions pursuant to Rule 11. See Fed.R.Civ.P. 11(c)(1)(A). Thus, to request fees pursuant to Rule 11 at this time is inappropriate.

Second, Rule 11 of the Federal Rules of Civil Procedure is violated when an attorney or unrepresented party "present[s] to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper" for an improper purpose, such as to harass or to cause unnecessary delay. Fed.R.Civ.P. 11(b)(1). Medical Protective has failed to demonstrate any facts supporting its conclusory assertion that Williamson's motion to intervene was filed for an improper purpose. See Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1990) (an award of sanctions under Rule 11 requires a finding of objective impropriety).

Accordingly,

**IT IS HEREBY ORDERED DENYING** Kymberli Williamson's Motion to Intervene. (Dkt. 14.)

**IT IS FURTHER ORDERED** that the Clerk of Court shall strike Kymberli Williamson's Answer to the Complaint and Counterclaim (Dkt. 15).

**IT IS FURTHER ORDERED DENYING** Dr. Pang's Rule 12(b)(7) Motion for Failure of Plaintiff to Join a Party Under Rule 19. (Dkt. 9.)

**IT IS FURTHER ORDERED DENYING** Medical Protective's request for an award of attorneys' fees.

DATED this 1st day of June, 2006.

Stephen M. McNamee
United States District Judge