WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Medical Protective Company, | No. CV-05-02924-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Herman Pang, et al., | |
| Defendants. | |

Pending before the Court is Defendant Herman Pang's motion for attorneys' fees (Doc. 329), filed pursuant to the Ninth Circuit Court of Appeals mandate (Doc. 336) (opinion published at *Med. Protective Co. v. Pang*, 740 F.3d 1279, 1284 (9th Cir. 2013)).

## I.    BACKGROUND

The Ninth Circuit has succinctly summarized the factual and procedural background underlying this claim:

> Pang bought medical malpractice insurance from the Medical Protective Company ("Medical Protective"). In June 2002, Pang applied for a substantial increase in his malpractice coverage, and disclaimed that he had knowledge of any claims or potential claims against him. Medical Protective approved the coverage increase on July 3, 2002. On July 25, 2002, Pang received notice that a patient, Kymberli Williamson, was suing him for malpractice in Arizona state court (the "*Williamson* suit").

> On September 21, 2005, Medical Protective filed this action in the District of Arizona seeking rescission of the coverage increase on the ground that Pang allegedly new of, but failed to disclose, Williamson's pending malpractice claim when he applied for the increase. Pang filed a counterclaim against Medical Protective for bad faith. Both Medical Protective and Pang moved for summary judgment, and the district court granted each party's motion in part. The court identified six unresolved

issues—relating to both Medical Protective's rescission claim and Pang's counterclaim—that remained for trial.

Before the trial in the federal action, Pang obtained a favorable jury verdict in the *Williamson* suit. Williamson then appealed the verdict to the Arizona Court of Appeals. On March 25, 2008, while Williamson's appeal was pending, Pang and Medical Protective alerted the district court that they had reached a settlement in their coverage dispute. According to the terms of the settlement, both Medical Protective's rescission claim and Pang's bad faith counterclaim would be dismissed without prejudice. Depending on the outcome of Williamson's appeal, the parties were permitted either to reopen the action or to dismiss it with prejudice.

At the parties request, the district court entered an order on March 26, 2008, dismissing both claims without prejudice (the "March 26 Order"). The March 26 Order specified that, no later than thirty days after the Arizona Court of Appeals issued a mandate in the *Williamson* suit,

> one of the parties herein shall file a motion in this action requesting: (1) that the Court enter a final order dismissing this action with prejudice; or (2) requesting that this action be re-opened for final pre-trial conference and trial; or (3) requesting that the non- final order of dismissal without prejudice and the Court's jurisdiction continue until after re-trial of the Williamson case and termination of all appeals therefrom; or (4) such other orders as may be appropriate.

If neither party filed such a motion, the March 26 Order would "automatically become a self-executing final order of dismissal with prejudice thirty-one (31) days after the filing of such mandate."

Williamson eventually succeeded on her appeal. The Arizona Court of Appeals overturned the jury verdict in favor of Pang and remanded the case for a new trial.[1] The Arizona Supreme Court subsequently denied Pang's petition for review. As a result, on February 25, 2010, the Arizona Court of Appeals issued its mandate in the *Williamson* suit.

Neither Pang nor Medical Protective moved to re-open the federal action within thirty days after the issuance of the mandate. As a consequence, the March 26 Order became final according to its terms, and the action was dismissed with prejudice.

The parties filed four post-judgment motions following the final order of dismissal. First, Pang moved for $126,590.93 in attorney's fees pursuant to Section 12-341.01, a statute granting courts discretion to award attorney's fees to the "successful party" in suits arising from contract. The district court denied Pang's fee motion, holding that there was "no 'successful party' within the meaning of Section 12-341.01" because the court had "never resolved the merits of either party's claims." *Med. Protective Co. v. Pang*, 271 F.R.D. 624, 628 (D. Ariz. 2010). The court determined that the case had been dismissed with prejudice based on a voluntary settlement agreement, and held that "[s]uch a result does not produce a 'successful party' within the meaning of Section 12-341.01." *Id.*

---

[1] Medical Protective ultimately settled the *Williamson* suit on Pang's behalf.

1
2
3
4

Second, Pang sought $9,000.76 in costs. After the Clerk of the Court refused to award costs because no final judgment had been issued in the case, the district court denied Pang's motion to "revise" the Clerk's denial of its Bill of Costs, reasoning that Local Rule 54.1(d) governed Pang's request, and that provision made costs unavailable in cases terminated by voluntary settlement. Alternatively, the Court denied Pang's request for costs for the same reasons that it denied Pang's request for fees.

5
6
7

Third, one week after Pang filed his first fee motion, Medical Protective moved to amend the judgment under Federal Rule of Civil Procedure 59(e) or to vacate the judgment under Federal Rule of Civil Procedure 60(b). The district court denied Medical Protective's motion. *Id.* at 627, 628.

8
9
10
11
12
13

Fourth, after the district court denied Medical Protective's motion, Pang filed a second motion for attorney's fees—this time seeking compensation for legal expenses incurred in opposing Medical Protective's post-judgment motion to set aside the March 26 Order. Pang argued that, as the successful party on the post-judgment motion, he was entitled to attorney's fees pursuant to Section 12-341.01. The district court denied Pang's second motion because it did not "trigger[] a new action arising out of contract"; consequently, the court's prior holding that Pang was not the successful party also barred Pang from recovering attorney's fees on his second fee motion. *Med. Protective Co. v. Pang* ["*Pang I*"], 2011 WL 3903096, at *4 (D. Ariz. 2011).

14

Pang timely appealed.

15
16

*Med. Protective Co. v. Pang* ("*Pang II*"), 740 F.3d 1279, 1280–82 (9th Cir. 2013); *see Pang I*, previous orders of the Court. (Docs. 305, 321).

17
18
19
20
21
22
23
24

The Ninth Circuit affirmed the Court's denial of Pang's motion for costs, but reversed the Court's denial of Pang's Motion for attorneys' fees. *Pang II*, 740 F.3d at 1284. Specifically, the Ninth Circuit held that the Court did not apply the correct legal standard in determining the "successful party" under Ariz. Rev. Stat. § 12-341.01. *Id.* at 1280. On remand, the Court must determine "(1) whether Pang was the 'successful party' as defined by Arizona law, and (2) if so, whether the district court should exercise its discretion to award attorneys' fees." *Id.*

## II.    LEGAL STANDARD

25
26
27
28

Rule 54(d) of the Federal Rules of Civil Procedure provides a procedural mechanism for moving for attorneys' fees due under state law. *See* Fed. R. Civ. P. 54(d)(2)(B)(ii). Arizona Revised Statute § 12-341.01 provides that "[i]n any contested action arising out of a contract, express or implied, the court *may* award the *successful*

*party* reasonable attorney fees." Ariz. Rev. Stat. § 12-341.01(A) (emphasis added). Following Arizona law, the Court must decide whether there is a "successful party." If the Court finds that a party is the "successful party" as envisioned in the statute, then the Court exercises its discretion on whether to award reasonable attorneys' fees. *See Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985) (in banc).

### A.    "Successful" Party

The trial court has substantial discretion to determine who is a successful party. *Fulton Homes Corp. v. BBP Concrete*, 155 P.3d 1090, 1096 (Ariz. Ct. App. 2007) (citing *Pioneer Roofing Co. v. Mardian Constr. Co.*, 733 P.2d 652, 664 (Ariz. Ct. App. 1986)). "The decision as to who is the successful party for purposes of awarding attorneys' fees is within the sole discretion of the trial court, and will not be disturbed on appeal if any reasonable basis exists for it." *Maleki v. Desert Palms Prof'l Properties, L.L.C.*, 214 P.3d 415, 422 (Ariz. Ct. App. 2009) (quoting *Sanborn v. Brooker & Wake Prop. Mgmt., Inc.*, 874 P.2d 982, 987 (Ariz. Ct. App. 1994); *accord Hale v. Amphitheater Sch. Dist. No. 10*, 961 P.2d 1059, 1065 (Ariz. Ct. App. 1998).

"[S]uccessful parties" are "not limited to those who have a favorable final judgment at the conclusion of the" action. *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1048 (Ariz. 1985) (in banc), *superseded by statute on other grounds*, Ariz. Rev. Stat. § 12-341.01. As such, "[a]n adjudication on the merits is not a prerequisite to recovering attorneys' fees under [§ 12-341.01]." *Fulton Homes*, 155 P.3d at 1096.

### B.    Discretion to Award Attorneys' Fees

If the Court finds that a party is the successful party, "there is no presumption that a successful party should be awarded attorney fees under § 12–341.01." *Motzer v. Escalante*, 265 P.3d 1094, 1095 (Ariz. Ct. App. 2011) (citing *Warner*, 694 P.2d at 1183).

Additionally, when a case involves several claims based upon different facts or legal theories, the court may decline to award fees "for those unsuccessful separate and distinct claims." *Schweiger v. China Doll Rest., Inc.*, 673 P.2d 927, 933 (Ariz. Ct. App. 1983).

### III.    ANALYSIS

#### A.    Whether Pang was the Successful Party

Defendant Pang asserts that he is entitled to reasonable attorneys' fees under Ariz. Rev. Stat. § 12-341.01 because (1) under the "totality of the litigation" Pang is the "net winner" for the case in chief (Doc. 329 at 3–7), and (2) Pang successfully defeated MPC's post-judgment Rule 59(e) and 60(b) motions (*id.* at 7–8).   In response, MPC argues that (1) there is no successful party within the meaning of § 12-341.01 (Doc. 330 at 2–5), and (2) Pang cannot be the successful party in the post-judgment motions because the post-judgment motions are considered in the totality of the litigation (*id.* at 5–8).

#### 1.    Legal Standard

The Court will consider "the totality of the circumstances and the relative success of the litigants" to determine whether there is a successful party. *McAlister v. Citibank*, 829 P.2d 1253, 1262 (Ariz. Ct. App. 1992). "In cases involving various competing claims, counterclaims and setoffs all tried together, the successful party is the net winner." *Berry v. 352 E. Virginia, L.L.C.*, 261 P.3d 784, 788 (Ariz. Ct. App. 2011) (quoting *Ayala v. Olaiz,* 776 P.2d 807, 809 (Ariz. Ct. App. 1989)). Additionally, "in a case involving multiple claims and varied success, the trial court may apply a 'percentage of success' or a 'totality of the litigation' test."   *Berry*, 261 P.3d at 788–89 (quoting *Schwartz v. Farmers Ins. Co. of Ariz.*, 800 P.2d 20, 25 (Ariz. Ct. App. 1990)).

#### 2.    Analysis

As a result of the self-executing March 26 Order (Doc. 262), the Court dismissed with prejudice MPC's rescission claim and Pang's bad faith. Both parties claim the March 26 Order as evidence that they are the successful party. (*See* Doc. 329 at 5–6 (Pang); Doc. 330 at 4 (MPC)). Pang argues that he is the successful party as the net winner of the totality of the litigation. (Doc. 329 at 4). MPC argues that under the totality of the litigation there is no successful party. (Doc. 330 at 2–3). Here, Pang erroneously conflates these two tests. The net winner and the totality of the litigation are two separate

tests *infra discussion* Part III.A.2.a, and the Court may consider either in determining if there is a successful party. The Court reviews both tests to determine which is applicable to the current case.

### a.       Applicability of "Net Winner" Versus "Totality of the Litigation" Test

Under the net judgment rule, the party that "obtains a judgment in excess of any setoff or counterclaim awarded to the other party" is the successful party. *Schwartz*, 800 P.2d at 25. *See also Berry*, 261 P.3d at 787, 789 (affirming the party with the greater monetary award as the net winner); *Ayala*, 776 P.2d at 809 (affirming the plaintiff as the net winner when only the plaintiff received monetary judgment on the single claim before the court); *Trollope v. Koerner*, 515 P.2d 340, 344 (Ariz. Ct. App. 1973) (affirming the appellant as the net winner when appellant received $791.75 out of $6000 claim and appellee received $500 out of $500 counterclaim). Here, neither party has received a monetary award on any of the competing claims and counterclaims. (*See* Doc. 262) (dismissing Pang's and MPC's claims with prejudice, and awarding neither party monetary judgments). Thus, the net judgment rule is inapplicable.

Under the totality of the litigation rule, the Court reviews the multiple claims and whether the parties succeeded on these claims to determine which party is the successful party. *Berry*, 261 P.3d at 788–89. There are no strict factors, rather the trial court is afforded discretion in reviewing the totality of the litigation. *See Pioneer Roofing Co. v. Mardian Constr. Co.*, 733 P.2d 652, 664 (Ariz. Ct. App. 1986). Here, the case contains multiple claims on which the parties had varied successes. Accordingly, the Court finds the totality of the litigation test is the appropriate test to determine if there is a successful party within the meaning of Ariz. Rev. Stat. § 12-341.01.

### b.       Applying Totality to the Rescission and Bad Faith Claims

MPC relies on *Schwartz*, 800 P.2d at 22, to argue that it is the successful party under the totality of the litigation test. (Doc. 330 at 4). In *Schwartz*, the insured plaintiff brought concurrent breach of contract and bad faith claims against the insurer defendant. 800 P.2d at 22. The court classified the bad faith claim as "a major issue" in the litigation,

and stated that the claim had "substantial disparity in the relief requested" in comparison to the $2000 breach of contract claim. *Id.* at 25. Under the totality of the litigation test, the trial court found the defendant insurer to be the prevailing party because it prevailed on the bad faith claim, the major part of the litigation. *Id.* at 24. The court of appeals affirmed the award of attorneys' fees to the defendant. *Id.* at 25.

MPC argues that *Schwartz* addresses the instant situation, and that a successful party is the one who defends against the bad faith claim. (Doc. 330 at 4). The *Schwartz* Court found that the insurer was the successful party because it defended against the major part of the litigation. *Schwartz*, 800 P.2d at 25. There, the major issue of the litigation was the bad faith claim because of the "substantial disparity in the relief requested." *Id.* Here, however, the major issue of the litigation was not the bad faith claim, but rather the rescission claim. In making this determination, the Court compares the increase in coverage Pang received as a result of the dismissal of MPC's rescission claim, to the benefit MPC received as a result of the dismissal of Pang's bad faith claim. If successful, the rescission claim would have reduced Pang's coverage by $4 million per claim and $2 million in the aggregate. If not for the dismissal with prejudice, Pang's lower limits, combined with the potential liability from the *Williamson* action, could have exposed him to a major claim outside the uncontested coverage limits.[2] Although MPC benefitted from the dismissal of Pang's bad faith claim, it is not clear that MPC initially faced as great a liability, particularly because the Court granted summary judgment against Pang's punitive damages claim.

Moreover, Pang's bad faith claim was voluntarily dismissed, as evidenced by his decision to allow the March 26 Order to self-execute. In contrast, MPC did not voluntarily choose to allow the March 26 Order to execute. This is evidenced by the Rule 59(e) and Rule 60(b) motions MPC filed to alter the Court's Order to a dismissal without

---

[2] Because the *Williamson* action settled for a confidential amount, the Court cannot definitively determine whether Pang faced liability outside the uncontested coverage limits. The difference in the per occurrence liability coverage was $4 million, so that is the potential liability the Court considers.

1    prejudice. (*See* Docs. 266, 268). Thus, Pang successfully defended against the initial

2    action brought against him. Attorneys' fees can be awarded when a party successfully

3    defends claims brought against them. *See Fulton Homes*, 155 P.3d at 1096.

4         The Court granted in part and denied in part each Party's motion for summary

5    judgment. (Doc 242 at 21). Successful summary judgment motions are pieces in the

6    totality of the litigation. *See Wagenseller*, 710 P.2d at 1047–48. The Court granted

7    MPC's motion for summary judgment: "1) on the issue of materiality on its rescission

8    claim and 2) on the issue of punitive damages on the bad faith counterclaim." (Doc. 242

9    at 20–21). The Court granted Pang's motion for summary judgment: "1) on MPC's claim

10   for partial rescission to the extent MPC bases its claim on Dr. Pang's answer to the non-

11   hospital organization review question and 2) on the issue of legal fraud regarding the

12   question about peer committee review." (Doc. 242 at 21). The Court preserved MPC's

13   rescission claim and Pang's bad faith claim for compensatory damages for trial. (Doc.

14   242 at 20). Viewed in the totality of the litigation, neither party was successful on the

15   partial grant of summary judgment because the rescission claim, the major issue, and the

16   bad faith counterclaim remained for trial. Accordingly, the Court finds that in the totality

17   of the litigation the partial grants of summary judgment factor evenly for the Parties.

18        Pang argues that he could be awarded attorneys' fees for the post-judgment

19   motions if found to be the successful party on those motions. (Doc. 329 at 7–8). In

20   contrast, MPC argues that the post-judgment motions are not separately reviewed, but

21   rather are pieces considered in the totality of the litigation. (Doc. 330 at 5–8). The Court

22   considers these motions in the totality of the litigation to determine whether Pang was the

23   successful party.

24        MPC submitted the Rule 59(e) and Rule 60(b) motions to alter the March 26 Order

25   to a dismissal without prejudice. (Doc. 266 at 13; Doc. 268 at 5). Pang opposed these

26   motions and requested the Court uphold the dismissal with prejudice. (Doc. 272 at 5–9;

27   Doc. 275 at 7–11). The Court upheld the dismissal with prejudice. (Doc. 305 at 6–8).

28   Although MPC argues that "Medical Protective's lack of success on a procedural motion

in no way can be construed as qualifying Dr. Pang as the ultimate successful party" (Doc. 330 at 6), these were not merely procedural motions. Pang's defense against MPC's Fed. R. Civ. P. 59(e) and 60(b) motions effectively ensured that the rescission claim, the major issue of the litigation, was permanently dismissed. Accordingly, Pang is the successful party in the post judgment motions.

In sum, the Court finds Pang to be the successful party in the totality of the litigation. First, the Court notes that the Parties were equally unsuccessful in the summary judgment motions. Second, the Court finds the increase in coverage Pang received as a result of the dismissal outweighed the benefit MPC received from the dismissal of Pang's bad faith claim. Through the Order of March 26, Pang reduced his future liability by $4 million per occurrence and $2 million in the aggregate. In contrast, MPC did not face as large a liability from the bad faith claim for compensatory damages. Finally, by opposing the Rule 59(e) and Rule 60(b) motions, Pang ensured the Court's dismissal with prejudice would remain in effect, thus ending the major issue of the litigation. Accordingly, under the totality of the litigation test, the Court finds Pang to be the successful party.

**B.    Whether the Court Should Exercise Its Discretion in Awarding Reasonable Attorneys' Fees**

Pang seeks attorneys' fees as the successful party. Under Ariz. Rev. Stat. § 12-341.01 the Court has discretion to award the successful party reasonable attorneys' fees. *Warner*, 694 P.2d at 1184.

**1.    Legal Standard**

If the Court finds a successful party, it has broad discretion in awarding reasonable fees. In exercising its discretion, the Court considers the six factors adopted in *Warner*:

> (1) whether the unsuccessful party's claim or defense was meritorious;
>
> (2) whether the litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result;
>
> (3) whether assessing fees against the unsuccessful party would cause an extreme hardship;

(4) whether the successful party prevailed with respect to all of the relief sought;

(5) whether the legal question presented was novel and whether such claim or defense have previously been adjudicated in this jurisdiction; and

(6) whether the award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorneys' fees.

*Wagenseller*, 710 P.2d at 1049 (citing *Warner*, 694 P.2d at 1184). No one factor is determinative, and the Court considers all six factors in its determination. *Wilcox v. Waldman*, 744 P.2d 444, 450 (Ariz. Ct. App. 1987).

### 2.    Analysis

Following the *Warner* factors, Pang argues that (1) MPC's claim was not meritorious (Doc. 329 at 9–10); (2) Pang's efforts were not superfluous in achieving the result (*id.* at 10); (3) assessing fees against MPC would not cause substantial harm (*id.*); (4) the dismissal with prejudice is an adjudication on the merits (*id.* at 10–11); (5) the rescission claim is not novel as it has been previously adjudicated in Arizona state and federal courts (*id.* at 11); and (6) an award of attorneys' fees would not discourage other insurance companies from filing declaratory judgment insurance policy litigation against other insureds (*id.*). Pang reiterates substantially similar arguments in his request for attorneys' fees on the post-judgment motions. (Doc. 329 at 11–12). The Court addresses each factor in turn.

Under the first factor, the Court examines the merit of MPC's rescission claim. The Court notes that a claim can have merit even if it does not succeed. *Scottsdale Mem'l Health Sys., Inc. v. Clark*, 791 P.2d 1094, 1099 (Ariz. Ct. App. 1990). Here, MPC's rescission claim survived the Court's grant of partial summary judgment to Pang. (Doc. 242 at 21). Surviving summary judgment indicates the claim was not frivolous, and, in the opinion of the Court, shows that the rescission claim was sufficiently meritorious to proceed to the jury.

Nonetheless, Pang argues that MPC's motion to dismiss the rescission claim (Doc.

- 10 -

260) after the trial court ruled for Pang in the *Williamson* suit indicates that the rescission claim was unnecessary and lacked merit. (Doc. 329 at 9–10). That MPC's pursuit of the rescission claim depended on the outcome of the *Williamson* action does not affect whether the claim had merit. Rather, this was a strategic decision by MPC. MPC's initial claim arose out of a concern that the *Williamson* case would demand costs outside of the uncontested insurance policy limit. (*See* Doc. 1 at 4–6). If the *Williamson* case had settled within the undisputed limit or been resolved in Pang's favor than it would not have been necessary for MPC to pursue the rescission claim. This is evidenced by MPC's willingness to dismiss the rescission action after the favorable trial court verdict in the underlying *Williamson* suit. (Doc. 260). However, whether Pang prevailed in the *Williamson* action is not relevant to the merit of MPC's fraud allegation against Pang. Accordingly, the determination of the *Williamson* action is not indicative of the merits of the rescission action.

Regarding the second factor, as a preliminary matter, the Court considers whether the Parties attempted to settle the claim, whether litigation could have been avoided, and whether the Parties' efforts were entirely superfluous in achieving the result. Pang argues he attempted to negotiate with MPC after the March 26 Order dismissed the rescission claim with prejudice. (Doc. 329 at 11). However, the sole communication from Pang does not mention negotiations, but rather demands payment of attorneys' fees and that MPC withdraw its pending Rule 59(e) and 60(b) motions. (*See* Exhibit O).  Accordingly, the Court finds that neither party attempted to enter into negotiations.

Additionally, the Court finds that the litigation could not have been avoided. Whether the rescission claim would be pursued or voluntarily dismissed depended heavily on the outcome of the *Williamson* case. The outcome of the *Williamson* case was unknown until that action finally settled on May 14, 2010. At the time the *Williamson* action settled, the Court had not issued its order on MPC's post-judgment motions. Thus, both parties' efforts were not "completely superfluous" in continuing to prepare for the rescission claim while the *Williamson* case remained unsettled.

1    The Court notes that "the result" on review is the dismissal with prejudice, as this
2    is the ultimate result of the rescission claim. The March 26 Order (Doc. 262) was self-
3    executing. By definition, the result of a self-executing action is contingent upon the
4    inaction of the parties, rather than their efforts. However, after the March 26 Order self-
5    executed, MPC strongly opposed the March 26 Order. Through its Rule 59(e) and 60(b)
6    motions, MPC sought to undo "the result" and amend the order to a dismissal without
7    prejudice. (Doc. 266 at 13; Doc. 268 at 9). Pang's efforts to uphold the dismissal with
8    prejudice were not completely superfluous because this Court denied MPC's motions and
9    the dismissal with prejudice stands. (Doc. 305 at 6–7).

10    Additionally, MPC contends that the motion for summary judgment on the
11    rescission claim had no relationship to the dismissal with prejudice because it was a self-
12    executing dismissal. (Doc. 330 at 12). However, Pang successfully defended against
13    MPC's request for summary judgment on the rescission claim. (Doc. 242 at 7–14). Had
14    Pang not successfully done so, "the result" would not have been the dismissal with
15    prejudice of MPC's rescission claim, but rather a judgment in MPC's favor. Accordingly
16    the Court finds Pang's efforts were not completely superfluous to the result.

17    Regarding the third factor, the Court finds MPC has failed to show how assessing
18    reasonable attorneys' fees and related costs would cause an "extreme hardship." MPC
19    argues that it has already paid significant fees during the various phases of this litigation,
20    which "adversely impact[ed]" MPC. (Doc. 330 at 12). Although further litigation fees
21    may adversely impact MPC, there is no evidence that the fees would cause an extreme
22    hardship. In contrast, as another Judge in this District has stated, "[p]laintiff is an
23    insurance company; the costs of litigating coverage claims can be considered a cost of
24    doing business." *Interstate Fire & Cas. Co., Inc. v. Roman Catholic Church of Diocese of*
25    *Phoenix ex rel. Olmsted*, CV-09-01405-PHX-NVW, 2012 WL 4856211, at *4 (D. Ariz.
26    Oct. 11, 2012). Accordingly, assessing reasonable attorneys' fees against MPC would not
27    cause extreme hardship.

28    Under the fourth factor, the Court reviews whether Pang succeeded in all the relief

he sought. In Pang's answer to MPC's complaint, he requested: (1) that MPC's Complaint be dismissed with prejudice; (2) for a declaration that MPC provide coverage with limits of $5,000,000 per claim and $5,000,000 aggregate, including claims by Kymberli Williamson; (3) compensatory damages; (4) punitive damages; (5) attorneys' fees; and (6) costs. (Doc. 21 at 11). Here, Pang succeeded on having the rescission claim dismissed with prejudice through the March 26 Order. Pang did not receive the declaration of coverage limits he sought and the March 26 Order dismissed his claim for compensatory damages. Additionally, the Court's summary judgment motion denied Pang the ability to seek punitive damages (Doc. 242 at 21), the Court denied Pang's motion for costs (Doc. 305 at 7–8), and Pang's request for attorneys' fees is currently before the Court. Admittedly, Pang has not succeeded on all relief sought. However, the dismissal of the rescission claim does weigh strongly in his favor, as it was the major part of the litigation. Additionally, while Pang did not receive declaratory relief, the *Williamson* case was entirely settled by MPC. Pang's claim for relief requested "MPC provide coverage . . . including claims by Kymberli Williamson." (Doc. 21 at 11). By settling the claim, MPC provided coverage for the claims by Williamson. On balance with Pang's failure to receive relief in his other claims, the Court finds this factor slightly favors Pang.

Regarding the fifth factor, the Court finds that MPC's rescission claim did not involve novel legal questions. MPC asserts this is a unique factual scenario, particularly due to the self-executing order. (Doc. 330 at 13). However, different factual scenarios do not create per se novel legal questions. Accordingly, the Court finds this factor does not weigh in either Party's favor.

Concerning the sixth factor, the Court does not find an award of attorneys' fees would produce a chilling effect that dissuades other insurance companies from having their legal rights determined under an insurance agreement. MPC has presented no argument on why an award of attorneys' fees to Pang would discourage insurers from bringing rescission claims against an insured. Thus, this factor favors Pang.

In sum, the Court finds that the *Warren* factors weigh in Pang's favor. Pang is entitled to an award of attorneys' fees. Accordingly, the Court uses its discretion to award Pang reasonable attorneys' fees.

## C.      Reasonableness of Requested Award

The "case law construing what is a 'reasonable' fee applies uniformly" to all federal fee-shifting statutes. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). In determining a reasonable attorneys' fee, the Court must begin with the "lodestar" figure which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). There is a "strong presumption" that the lodestar is the reasonable fee. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). When deciding the reasonable number of hours expended and the reasonableness of the hourly rate, a court may consider: "(1) the novelty and complexity of the issues[;] (2) the special skill and experience of counsel[;] (3) the quality of representation[;] and (4) the results obtained." *Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988), *vacated*, 490 U.S. 1087 (1989), *reinstated*, 886 F.2d 235 (9th Cir. 1989). Additionally, "[i]n determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended. Those hours may be reduced by the Court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; [or] if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on other grounds,* 808 F.2d 1373 (9th Cir. 1987) (internal citations omitted). The Court will adhere to these factors in reviewing the reasonableness of Pang's Motion for Attorneys' Fees & Related Non-Taxable Expenses.

### 1.      Total Attorneys' Fees and Non-Tax Related Expenses

On behalf of Attorney Timothy Kasparek, junior partner Rae Richardson, and paralegal Renee Slagter, Pang seeks $126,590.93 in attorneys' fees and non-tax related expenses for the case in chief and $10,120 in attorneys' fees for the post-judgment

motions. In total, Pang seeks $136,710.93.

### a.    Total Requested Attorneys' Fees

Pang points to the time records listed in Exhibits G-1, G-3, and N to support his burden of justifying the hours expended. (Doc. 329). Exhibit G-1 lists the total hours as 444.50, claiming fees of $85,887.00, and costs of $1972.81. (Doc. 329, Ex. G-1 at 73). Exhibit G-3 lists the total hours as 156.1, claiming fees of $31,240, and costs of $2,728.42. (Doc. 329, Ex. G-3 at 9). Exhibit N lists the total hours at 50.6, claiming fees of $10,120, and zero costs or expenses. (Doc. 329, Ex. N at 3). The submitted records account for a total of 619.1 hours for Attorney Kasparek (Doc. 329, Ex. G-1 at 6, 10, 12, 15, 17, 21, 26, 28, 31, 34, 37, 71; Ex. G-3 at 9; Ex. N at 3); 6.5 hours for junior partner Richardson (Doc. 329, Ex. G-1 at 73); and 25.6 hours for paralegal Slagter (*id.*). Although claiming $136,710.93 in fees and non-tax related expenses, in total Pang has provided documentation justifying only $131,928.23. The Court will not award unjustified fees. The Court finds that, at most, Pang has justified $131,928.23 in attorneys' fees and non-taxable related expenses.

### b.    Fees for Junior Partner Richardson and Paralegal Slagter

MPC has not objected to Pang's request for $975 in fees for junior partner Richardson, nor has MPC objected to the $2432 for paralegal Slagter. Additionally, MPC has not objected to the reasonableness of junior partner Richardson's $150 per hour rate or Slagter's $95 per hour rate. The Court reviews these fees for their reasonableness under Local Rule of Civil Procedure 54.2. *See, e.g.*, *Gametech Int'l, Inc. v. Trend Gaming Sys.*, 380 F.Supp.2d 1084, 1100 (D. Ariz. 2005) (reviewing attorney and paralegal fees for reasonableness). Pang submitted 6.5 hours for Richardson's attendance at a document inspection. (Doc. 329, Ex. G-1 at 38). The Court finds this fee and rate reasonable. Pang submitted 25.6 hours for Slagter's preparation and organization of legal documents, as well as her research and conference call participation. (Doc. 329, Ex. G-1 at 27, 40, 43). The Court finds these fees and the per hour rate reasonable. Accordingly,

the Court awards 6.5 hours totaling $975 for Richardson and 25.6 hours totaling $2432 for Slagter's fees.

### c.    Attorneys' Fees for Attorney Kasparek

Pang seeks attorneys' fees on behalf of Attorney Kasparek. Pang has submitted records accounting for 619.1 hours. MPC objects to several portions of the incurred fees. MPC argues that (1) Pang's task-based itemized statement of attorneys' fees contains numerous descriptions that are incomplete and inadequate (Doc. 330 at 14); (2) Pang grouped numerous tasks under a total billing hour (*id.* at 15); (3) it is unreasonable to award Pang fees on unsuccessful claims (*id.* at 16); and (4) the post-judgment motions fees contain time entries unrelated to the post-judgment motions (*id.* at 17). The Court reviews MPC's claims, along with the entire record, to determine the reasonableness of the fees.

### i.    Adequate Non-Privileged Descriptions

MPC argues (Doc. 330 at 15) that the redacted entries in Pang's submitted task-based itemized statement (Doc. 329, Exs. G-1, G-3, N) fail to provide an adequate non-privileged description of the services rendered.

In the District of Arizona, motions for attorneys' fees and costs are governed by Local Rule of Civil Procedure 54.2. A motion for attorneys' fees "must adequately describe the services rendered so that the reasonableness of the charge can be evaluated." L.R. Civ. 54.2(e)(2). Although counsel should not disclose matters giving rise to issues associated with attorney-client privilege and work-product doctrine, counsel must "nevertheless furnish an adequate non-privileged description of the services in question." *Id.* Otherwise, the court may reduce the fee for those incomplete and inadequate descriptions. *Id.*

MPC points to descriptions such as "01/20/06 Email to Dr. Pang RE: [redacted]." (Doc. 330, Exhibit 2 at 1). MPC argues that such a statement lacks an adequate non-privileged description of the email. However, Pang has submitted a detailed report, Exhibit G-5, with his reply to MPC's motion. (Doc. 334, Ex. G-5). Exhibit G-5 provides

an adequate non-privileged description of each of the entries MPC described as lacking. For example, "01/20/06 Email to Dr. Pang RE: [redacted]" (Doc. 330, Ex. 2 at 1) is described as "Email to Dr. Pang re [conference with counsel]; [received and reviewed reply from Pang]." (Doc. 334, Ex. G-5 at 3). Exhibit G-5 provides adequate description for each entry cited by MPC in Exhibit 2. Thus, the Court finds Pang has furnished an adequate non-privileged description of the services in question. Accordingly, the Court finds these contested fees reasonable.

### ii.    Block-Billing

MPC additionally argues that entries where Pang grouped several tasks together are inadequate and incomplete because it is impossible to evaluate the reasonableness of each individual task within the grouped entry.[3] (Doc. 330 at 15). This type of block-billing is not inappropriate *per se* when the party seeking fees meets the basic requirements of "listing his hours and identifying the general subject matter of his time expenditures." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (internal quotations omitted); *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (noting that although the fee applicant bears the burden of submitting "evidence supporting the hours worked and rates claimed," an applicant is "not required to record in great detail how each minute of his time was expended"). While not forbidden by case law, block-billing makes it nearly impossible for the Court to determine the reasonableness of the hours spent on each task. Where the Court cannot distinguish between the times claimed for the various tasks, the Court will reduce the award accordingly. L.R. Civ. 54.2(e)(2); *see Chalmers*, 796 F.2d at 1210.

Here, there are 26 entries of block-billing. (*See* Doc. 330, Ex. 3 at 7–13). Of the 26 entries, 15 do not list the time breakdown for each individual task within the group (*see,*

---

[3] MPC also argues that these block-billed entries are inadequate and incomplete because they do not provide adequate non-privileged descriptions. (Doc. 330 at 15). As previously explained, Pang has submitted adequate non-privileged descriptions for each of these listed entries. (*See* Doc. 334, Ex. G-5). After reviewing these entries, the Court finds that Pang provided adequate non-privileged descriptions for each of the contested entries. Accordingly, the Court finds these fees reasonable.

1   *e.g.*, Doc. 329, Ex. G-1 at 45), and 11 do list the individual time breakdowns (*see, e.g.*,

2   Doc. 329, Ex. G-1 at 39). For the 11 block-billed entries that list times for each task, the

3   Court finds the itemized statements to be adequate and complete. Of the 15 entries that

4   are block-billed without separate times listed for each task, the Court finds 13 entries

5   unreasonable. The two remaining entries are reasonable because they bill .1 hours for

6   reviewing multiple emails. (Doc. 329, Ex. 2 at 9, 13). In sum, the 13 unreasonable entries

7   total 33.7 hours. The Court therefore finds 33.7 hours unreasonable and will reduce the

8   reasonable hours of the lodestar calculation accordingly.

9   ### iii.   Pang's Unsuccessful Counterclaims

10   MPC argues that Pang is not entitled to fees incurred in relation to the

11   counterclaims, because Pang was unsuccessful on the bad faith counterclaims. (Doc. 330

12   at 16). In Arizona, when "a party has accomplished *the result* sought in the litigation, fees

13   should be awarded for time spent even on unsuccessful legal theories." *Schweiger*, 673

14   P.2d at 933 (emphasis added). As previously discussed, the Court found "the result" to be

15   the dismissal with prejudice of the rescission claim. *See discussion supra* Part III.B.2.

16   Because Pang accomplished the result that he sought in the litigation, fees should be

17   awarded for time spent on the unsuccessful counterclaims. Accordingly, the Court finds

18   an award of the hours spent on the counterclaims reasonable and will award the time

19   spent on the counterclaims.

20   ### iv.   Fees Unrelated to the Post-Judgment Motions

21   MPC argues that Pang is not entitled to certain fees claimed for the post-judgment

22   motions because "the time entries do not pertain to solely the Rule 59(e) and Rule 60(b)

23   motions." (Doc. 330 at 17). MPC specifically references the 10.9 hours claimed for oral

24   argument preparation and attendance. (*Id.*) MPC argues that Pang cannot seek fees

25   because the "majority of the motions for consideration on that day of oral argument were

26   filed by Pang and denied by the Court." (*Id.*)

27   The Court notes MPC does not cite any statutes, cases, or rules in support of the

28   argument that a party seeking fees for oral argument preparation cannot have brought the

majority of motions for consideration. The Court does not find this argument compelling, particularly because MPC's Rule 59(e) and Rule 60(b) motions that sought to re-open the rescission claim were also argued that day. Accordingly, the Court does not find these 10.9 hours unreasonable.

MPC further contests numerous entries in Exhibit N as unnecessary and unrelated to the post-judgment motions. (Doc. 330 at 17). This includes entries such as emailing Dr. Pang on the status of the motions and reviewing the Court's orders on the oral argument. (Doc. 330, Ex. 5 at 23). The Court does not find it unreasonable for Attorney Kasparek to keep Pang informed on the status of motions which could re-open the rescission claim against him. Nor does the Court find reviewing the Court's orders unreasonable. Accordingly, the Court finds the fees contested in Exhibit-5 reasonable.

### v.    Legal Fees and Costs Associated with Pang's Second Motion for Attorneys' Fees, Costs, and Expenses

In addition to other fees, Pang seeks to recover 5.3 hours of Attorney Kasparek's time related to the preparation of the Memorandum in support of Dr. Pang's Second Motion for Award of Attorneys' Fees, Costs, and Expenses. (*See* Doc. 329, Ex. N at 3). Under the Local Rules, the Memorandum in Support of the Motion for Award of Attorneys' Fees, Costs, and Expenses must include discussion of eligibility, entitlement, and reasonableness. L.R. Civ. 54.2(c)(1)–(3). Specifically, under entitlement, "[i]f the moving party claims entitlement to fees for preparing the motion and memorandum for award of attorneys' fees and related non-taxable expenses, such party also must cite the applicable legal authority supporting such specific request." L.R. Civ. 54.2(c)(2).

While Pang has complied with Local Rule 54.2(c)(1) and (3) (Doc. 329 at 9–17), he has failed to cite any applicable legal authority supporting his claim of entitlement to fees for preparing the Second Motion and Memorandum for Award of Attorneys' Fees, as required by Local Rule 54.2(c)(2). Accordingly, Pang has not shown that he is entitled to recovery for the 5.3 hours of attorney time spent in preparing his motion for fees and costs. The Court will reduce the reasonable hours component of the lodestar calculation

accordingly.

### vi.    Hours Billed During Air Travel

The Court notes Pang, on behalf of Attorney Kasparek, has claimed 19.1 hours for air travel time. Under the Local Rules, "[o]rdinarily air travel time should not be charged. If services were performed during such time, then describe such services rather than charging for travel time." L.R. Civ. 54.2(e)(2)(D). Of the 19.1 hours billed for air travel time, only 10.4 hours describe the services performed by Attorney Kasparek. (Doc. 329, Ex. G-1 at 65–66). However, for the remaining 8.7 hours, Attorney Kasparek billed for air travel but failed to describe the services performed during that time. (Doc. 329, Ex. G-1 at 66, 68, and 69). Consequently, Attorney Kasparek has not shown that he is entitled to recover those 8.7 hours billed during air travel time. Accordingly, the Court finds the 8.7 hours unreasonable, and will reduce the reasonable hours component of the lodestar calculation accordingly.

### vii.    The Reasonableness of Attorney Kasparek's Hourly Rate

MPC has not objected to the reasonableness of Attorney Kasparek's $200 hourly rate and Attorney Kasparek has complied with Local Rule 54.2(d)(4)(B) (requiring, "as appropriate," a discussion of "the comparable prevailing rate") (Doc. 329, Exs. G, M). Accordingly, the Court finds Attorney Kasparek's rate of $200 per hour reasonable and will use this rate in its lodestar calculation.

### viii.    Lodestar Calculation of Attorney Kasparek's Reasonable Fees

For the efforts of Attorney Kasparek, Pang's motion for attorneys' fees seeks recovery of 619.1 total hours of time at the rate of $200 per hour. As detailed above, the Court has found a total of 47.7 of those hours unreasonable. Accordingly, the Court finds Pang entitled to recover the remaining 571.4 hours at the rate of $200 per hour. These sums yield a final lodestar calculation of $114,280. Because there is a "strong presumption" that the lodestar is the reasonable fee, *Del. Valley Citizens' Council for*

*Clean Air*, 478 U.S. 546 at 565, the Court finds $114,280 in total attorneys' fees, expenses, and costs claimed for Attorney Kasparek reasonable.

### ix.   Attorney Kasparek's Related Non-Taxable Expenses

Along with attorneys' fees, Pang has requested recovery of $4,701.23 for certain non-taxable related expenses. (*See* Doc. 329, Exs. G-1, G-3). Under the Local Rules, Pang must "identify each related non-taxable expense with particularity." L.R. Civ. 54.2(e)(3). Furthermore, "[c]ounsel should attach copies of applicable invoices, receipts, and/or disbursement instruments. Failure to itemize *and verify costs* may result in their disallowance by the court." *Id.* (emphasis added).

In reviewing the record, the Court notes that Pang separately identified each related non-taxable expense in its itemized statement. (Doc. 329, Ex. G-1 at 6, 10, 15, 17, 21, 26, 28, 31, 35, 37, 72; G-3 at 8–9). However, Pang has failed to attach copies of applicable invoices, receipts, and/or disbursement instruments. Without such documentation, the Court cannot verify these expenses. Accordingly, the Court does not find the $4,701.23 in related non-taxable expenses reasonable, and will not award these expenses.

### d.   Total Calculation of Award Amount

*Attorneys' Fees, Costs, and Expenses:*

Rae Richardson: $975

Renee Slagter: $2432

Timothy Kasparek: $114,280

Related Non-Taxable Expenses: $0

Total: $117,687

/ /

/ /

/ /

/ /

- 21 -

IV.    **CONCLUSION**

Accordingly,

**IT IS ORDERED** GRANTING in part and DENYING in part Pang's Third Motion for Attorneys' Fees, Costs, and Expenses (Doc. 329), and awarding Pang a total of $117,687 in attorneys' fees, costs, and expenses, as described above.

Dated this 19th day of March, 2014.

_____
James A. Teilborg
Senior United States District Judge